## BRACKETT *et al. v.* ARP.

The act approved August 6, 1908 (Ga. Laws 1908, p. 419), creating a new charter for the City of Blue Ridge, was intended to and did supersede in its entirety the act of December 13, 1900 (Ga. Laws 1900, p. 228), which also created a charter for that municipality, and had the effect of repealing by implication the provisions for filling vacancies by election, to which the provisions in section 4 of the act of 1900 related.

No. 3604. JULY 26, 1923.

Quo warranto. Before Judge Blair. Fannin superior court. January 22, 1923.

*Dorsey, Brewster, Howell & Heyman, B. L. Smith,* and *T. A. Brown,* for plaintiffs.

*William Butt,* for defendant.

BECK, P. J. This case comes to the Supreme Court on exceptions to the judgment of the lower court denying the petition of the relators in quo warranto proceedings brought by Brackett and other citizens and taxpayers of Blue Ridge, Georgia, who contend that Arp, the respondent, has usurped the office of councilman, which belongs to Brackett, one of the relators. It is alleged in the petition, that Brackett was elected councilman of Blue Ridge for 1923; that he undertook to discharge the duties of the office, but that Arp usurped the place. At the regular election, held on the 9th day of December, 1922, there was a failure to elect a full quota of five councilmen, authorized by the charter, only four being then selected, a tie resulting as to the fifth place. Thereupon an election was called by the then mayor for the 23d day of December, at which election Brackett was chosen as the fifth councilman. Thereafter Brackett was sworn into office, on the first day of January, 1923, with the mayor and other councilmen who were elected at the regular election held on December 9th. On the same day, that is, January 1, 1923, after the mayor and the four

councilmen who had been chosen at the regular election on December 9th, and Brackett, who was chosen on December 23d, had all been inducted into office, it was moved that Arp be elected a member of council to fill an alleged vacancy due to the failure to elect a fifth councilman at the election of December 9th. Two councilmen voted in the affirmative, and three, one being Brackett, voted in the negative; whereupon the mayor directed the clerk to disregard Brackett's vote, declared a tie to exist, and himself cast the deciding vote for Arp, and thereafter recognized him as the fifth councilman, ignoring and refusing to recognize Brackett. The respondent filed demurrer and answer. No specific ruling upon the demurrer was made, but the court in his judgment stated that he considered the case "from the standpoint of the defendant's demurrer, which admitted the facts of the petition."

The General Assembly, by an act approved December 13, 1900, created a new charter for the Town of Blue Ridge in this State. By the provisions of that charter the name of the Town of Blue Ridge was changed to the City of Blue Ridge; certain stated privileges, rights, and powers were conferred on the municipality; the act also embraced the usual provisions as to the election of officers, etc. Acts 1900, p. 228. Section 4 of the act contains the provision relating to the election of officers, that is, a mayor, councilmen, clerk and treasurer, and in that section it is enacted, that, "should there fail to be an election in said city at the time specified, or in any year thereafter, from any cause whatever, or should a vacancy occur from death, resignation, or otherwise, and the office of mayor or councilman, clerk or treasurer, in the said City of Blue Ridge, the mayor or mayor pro tem. shall order an election to fill said vacancy by giving ten days' notice in the newspapers published in Blue Ridge." It should be noted that under the provision for filling a vacancy, whether that vacancy was caused by a failure to hold an election, or should occur from death, resignation, or otherwise, the vacancy was to be filled by an election upon ten days notice given as prescribed in the act. Again, the legislature created a new charter for the City of Blue Ridge by an act adopted August 6, 1908 (Ga. Laws 1908, p. 419). The caption of the act is as follows: "An act to amend, consolidate, and supersede the several acts incorporating the City of Blue Ridge in the county of Fannin, State of Georgia; to create a new charter

and municipal government for said corporation; to declare the rights and powers of the same, and for other purposes.' And in section 4 of the act the following provision is made for filling vacancies: " In the event that the office of mayor or any one or more of the councilmen shall become vacant by death, resignation, removal, or otherwise, said vacancy or vacancies may be filled by appointment and selection by the mayor and councilmen, in cases of vacancies in the council, and by the councilmen in case of a vacancy in the office of mayor, and persons so selected shall be duly qualified to fill such vacancies." The repealing clause of the act of August 6, 1908, is in this language: " Be it further enacted, that all acts of the General Assembly heretofore passed, incorporating the town of Blue Ridge, and the City of Blue Ridge, and all amendments thereto, and conferring powers on same, are hereby consolidated into and superseded by this act, and all provisions of former acts which are inconsistent with and at variance with this act are hereby expressly repealed, and all laws and parts of laws in conflict with this act be and the same are hereby repealed." And the controlling question which we are to decide here is, whether or not the provision in the act of 1908 for filling vacancies is exhaustive of that subject and supersedes in its entirety the provision for filling vacancies as it appears in the act of 1900. We are of the opinion that it does. It will be seen from the caption of the act of 1908 that its purpose was to amend, consolidate, and supersede the several acts incorporating the City of Blue Ridge; to create a new charter and municipal government for said corporation; to declare the rights and powers of the same, and for other purposes.

Counsel for plaintiff in error contend that the provision for filling vacancies in section 4 of the act of 1900 is not repealed or superseded by the later act of 1908. It is insisted that the act of 1908 makes no provision for the happening of any such contingency as a failure to elect a councilman, due to a tie vote, or for any other reason; and that none of the later acts of the General Assembly amending the act of 1908 make provision for the happening of such an event. It is pointed out in the brief of counsel for plaintiff in error that all the acts passed subsequently to 1900 provide only for filling vacancies in council or the mayor's office, which may occur " by death, resignation, removal, or

otherwise," and that this provision is applicable only to a vacancy that occurs after a councilman has been elected and inducted into office. It is further contended that the provision of section 4 of the act of 1900, which declares that "should there fail to be an election in said city at the time specified, or in any year thereafter, from any cause whatever," etc., is a specific provision for a case where there was a failure to hold an election; and that the following provision for filling vacancies occurring from death, etc., is applicable only to vacancies occurring after an election and the induction into office of the officer elected. If we had before us only the two provisions as to filling vacancies, the one in the charter of 1900 and the other in the charter of 1908, we might agree with counsel. For we recognize the well-established doctrine that the presumption against a repeal by implication is strong, and that constructive repeals, or repeals by implication, are not favored. That doctrine has been invariably recognized and adhered to in cases where it was involved which have been decided by this court. In the case of *Johnson* v. *Southern Mut. B. & L. Asso.*, 97 *Ga.* 622 (25 S. E. 358), it was said: "Repeals by implication, however, are not favored; and it is only in so far as a statute is clearly repugnant to a former statute, and so irreconcilably inconsistent with it that the two can not stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it, that such a repeal will be held to result. . . We think it is clear that there can be no repeal by implication of a provision the subject-matter of which is not dealt with at all in the latter act, and which is not in any way inconsistent with or repugnant to that act." But we are of the opinion that the subject of filling vacancies is dealt with in the new charter of Blue Ridge created by the act of 1908. That provision we have quoted above, and it embraces cases of vacancies occurring by "death, resignation, removal, or otherwise." That this clause of the act deals with the subject of vacancies is patent. Is the provision broad enough to cover vacancies occurring because of the failure to elect, as in the present case. When provision was made for filling vacancies happening because of "death, resignation, or removal," the legislature was providing for that class of vacancies occurring from causes which are most usual. But the lawmakers recognized that vacancies might occur from other causes, not usual or common, such

as might possibly occur; and they therefore added the comprehensive words, " or otherwise." As we have said above, if we had only before us the provisions of the two clauses in regard to vacancies, the one in the act of 1900 and the other in the act of 1908, we might logically decide that the provision for filling vacancies where there is a failure to hold an election related to vacancies not provided for in the other clause. But there are other considerations bearing upon this question. The act of 1908 creates a new charter for the City of Blue Ridge. It was intended to consolidate and supersede the several acts incorporating that municipality; and it contains not only the recital in the caption that.the act was to consolidate and supersede the several acts of incorporation, which apparently might have been as strong an expression as it was necessary to use, but the draftsman of the act added in the caption that the purpose of the act was " to create a new charter and municipal government for said corporation." And the act itself, as a whole and in particular features, shows that it was intended to " supersede " the several acts incorporating the City of Blue Ridge. The former act, in certain cases, contemplated an election as the means of filling a vacancy; the latter act contemplated filling vacancies by appointment. It dealt with the subject-matter of vacancies, but eliminated an election as a method of filling them.

In considering the question as to whether the act of 1908, creating a new charter for the City of Blue Ridge, was intended to supersede entirely the act of 1900, which also created a charter for that city, it will not be amiss to consider how much more elaborate and complete are the provisions of the act of 1908, in all that pertains to the rights, powers, purposes, etc., of the municipality, than are the provisions of the former act. And we would point out especially the fact that the provision for holding election in case of the failure to hold an election at the regular time, which is provided for in section 4 of the act of 1900, was necessarily repealed by implication by the act of 1908; for the latter act specifically deals with the subject of " intermediate " or special election in the city for any purpose, provides for the registration of voters, etc., which regulations could not be observed and complied with if the election was held under the provisions of section 4 of the act approved December 13, 1900. If Brackett, who was a candidate for the office of councilman in the December, 1922, election, at

which election councilmen for the year 1923 were chosen, had at a prior election been elected to that position and been the incumbent at the time there was a failure to elect because of a tie vote, then under the provisions in the charter that one who had been elected mayor or councilman should hold office until his successor was elected; the mayor and councilmen of the town could not have declared a vacancy existing so as to make way for the appointment of Arp. But Brackett was not the incumbent of the office, so far as appears from the record, at the time of the election in December, 1922, when there was a failure to elect because of the tie vote; and it does not appear that there was any incumbent of the office willing or offering to fulfill the duties of councilman at the time Arp was appointed. Brackett was there insisting that he was councilman entitled to vote; but his claim to the office rested upon the result of an election that was void, — held according to the provisions of a prior charter, which had been repealed. That being true, there was a vacancy when Arp was appointed, and he was appointed in accordance with the provisions in the charter for filling vacancies.

What we have said above disposes of the controlling question in this case. There are other subsidiary questions which it is not necessary to discuss. It follows from what we have said that the court did not err in refusing to oust the defendant in error and in holding that the plaintiff in error, Brackett, was not entitled to the office.　　　*Judgment affirmed. All the Justices concur.*